## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SUMANA BASU-DUGAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )          1:06CV00007 |
| | ) |
| MICHAEL J. ASTRUE,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## <u>RECOMMENDATION OF MAGISTRATE JUDGE ELIASON</u>

Plaintiff Sumana Basu-Dugan seeks judicial review pursuant to
42 U.S.C. § 405(g) of the Commissioner's final decision denying her
disability insurance and supplemental income insurance ("SSI")
benefits.   The Commissioner's denial decision became final on
November 16, 2005, when the Appeals Council concluded there was no
basis to review the hearing decision of the Administrative Law
Judge ("ALJ").   In this action, the parties have filed cross-
motions for judgment, and the administrative record has been
certified to the Court for review.

Plaintiff filed an application for SSI on March 15, 2002, and
for disability insurance benefits on April 13, 2002, alleging
disability as of June 2, 2000, due to three ruptured discs,
residuals from spinal fusion surgery, chronic fatigue syndrome
("CFS"), fibromyalgia, irritable bowel syndrome ("IBS") and

---

[1]Michael J. Astrue became the Commissioner of Social Security on February
12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure,
Michael J. Astrue should, therefore, be substituted for Commissioner Jo Anne B.
Barnhart as the defendant in this suit. No further action need be taken to
continue this suit by reason of the last sentence of section 205(g) of the Social
Security Act, 42 U.S.C. § 405(g).

depression.   Her application was denied initially and on reconsideration, and Plaintiff filed a request for a hearing.   A hearing was held before ALJ Allan T. O'Sullivan on December 20, 2004 in Raleigh, North Carolina, and a decision denying Plaintiff's claim was issued on March 23, 2005.   At the time Plaintiff was 35 years old and, thus, a younger individual.   Plaintiff filed a request for review, and on November 16, 2005, the Appeals Council found no basis on which to review the ALJ's decision.   Plaintiff then filed a request for judicial review in this Court on January 4, 2006.

## <u>Scope of Review</u>

The scope of review by this Court of the Commissioner's decision denying benefits is limited.   <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981).   The Court must review the entire record to determine whether the Commissioner has applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence.   <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).   Where this is so, the Commissioner's findings are conclusive.   The Court may not reweigh conflicting evidence that is substantial in nature and may not try the case <u>de novo</u>.   <u>Id.</u>   The Court may not make credibility determinations or substitute its judgment for that of the ALJ's.   <u>Johnson v. Barnhart</u>, 434 F.3d 650, 653 (4th Cir. 2005).   "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," <u>Richardson v. Perales</u>, 402 U.S. 389 (1971) (citations omitted), or "evidence which . . . consists

-2-

of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

In reaching a decision on Plaintiff's claim, the ALJ followed a five-step analysis set out in the Commissioner's regulations. 20 C.F.R. §§ 404.1520, 416.920(2007). Under the regulations, the ALJ is to consider whether a claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. The burden of persuasion is on the claimant through the fourth step. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). If the claimant reaches the fifth step, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering his or her age, education and work experience. Id.

In this case, the ALJ found that Plaintiff met the disability insured status requirements of the Social Security Act on her alleged onset date of disability and remained insured through December 31, 2004. (Tr. at 17.) At the first step of the sequential evaluation, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since June 2, 2000, her alleged onset date of disability. (Id.)

The second step in the sequential evaluation process is to determine whether Plaintiff has a severe impairment. A severe

-3-

impairment is one which, either separately or in combination with another impairment, significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c)(2007). At step two, the ALJ found that Plaintiff had severe impairments including pain, CFS, fasciitis, bilateral knee pain due to arthritis, ulnar nerve damage in her right arm, depression and anxiety. (Tr. at 18.) At step three of the sequential evaluation, the ALJ found that Plaintiff did not have an impairment, or combination of impairments, that met or equaled a listing in Appendix 1, Subpart P, Regulation Number 4. (Id. at 22.)

The ALJ concluded his evaluation of Plaintiff's residual functional capacity at steps four and five by noting that although Plaintiff no longer retained the residual functional capacity to perform her past relevant work as an administrative assistant, telephone solicitor, bookkeeper or personnel recruiter, she is able to perform light work involving simple, routine, repetitive tasks in an environment with no respiratory irritants such as dust, fumes or smoke. (Id. at 23.) Considering Plaintiff's age, education and work experience, her exertional capacity for a limited range of light work, and the testimony of a vocational expert, the ALJ, using Medical-Vocational Rule 201.21 as a framework for decision-making, found that Plaintiff was "not disabled" as defined in the Social Security Act at any time through the date of the decision, March 23, 2005. (Id. at 25.)

-4-

In this action, Plaintiff first argues that the ALJ erred in failing to properly analyze Plaintiff's allegations of pain in accordance with Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). (Docket No. 12, Br. in Supp. of Pl.'s Mot. for J. on the Pleadings at 12-14.) Specifically, Plaintiff contends that the ALJ committed reversible error by failing to expressly find whether Plaintiff has an impairment which could reasonably be expected to produce the pain which Plaintiff alleges. (Id. at 13.)

Under the regulations, the determination of whether a person is disabled by pain or other symptoms is a two-step process. Craig, 76 F.3d at 594. First, there must be objective medical evidence showing the existence of a medical condition or impairment which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. Id. This does not mean just any pain or some pain, but rather the pain from which Plaintiff alleges she suffers. Id. Second, and only after Plaintiff has met the threshold obligation of showing by objective medical evidence of a medical impairment reasonably likely to cause the pain claimed, the Commissioner must next determine the intensity and persistence of Plaintiff's pain, and the extent to which it affects her ability to work. Id. at 595. In making this determination, the ALJ may consider the presence or lack of objective evidence of pain, inconsistencies in the evidence, and statements by Plaintiff and physicians; in short, all relevant evidence in making an evaluation

-5-

of the credibility of Plaintiff's subjective complaints of pain.
Id. at 595-96.

Subjective allegations of severe pain may be discounted when not supported by objective medical evidence and/or supporting medical opinions are made without any testing. Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005). The ALJ also may discount subjective complaints of pain based on credibility determinations, including evasive, unclear or exaggerating testimony by Plaintiff, or testimony at odds with Plaintiff's routine activities. Id.

Plaintiff argues that the ALJ erred in failing to make a specific finding at step one of the Craig analysis. (Docket No. 12, Pl.'s Br. at 13.) However, it is evident from the ALJ's opinion that he agrees with Plaintiff that her claimed impairments could reasonably be expected to produce the pain she alleges. Otherwise, there would be no reason for the ALJ to proceed to a lengthy step two Craig analysis. More to the point, prior to evaluating Plaintiff's subjective complaints of pain, the ALJ had just reviewed the medical records regarding the surgery and treatment on her back and arm. (Tr. at 18-20.) Thus, the ALJ was well aware of the objective medical evidence for the pain condition, and actually found she suffered from pain.[2] In

_____

[2]Plaintiff appears to argue that the fibromyalgia alone was capable of producing the pain, but fails to point to the record where it was determined to cause the specific pain to her back and arm, as opposed to the other factors which were determined to be the cause. (See Tr. at 18-20.) On the other hand, Plaintiff's impairments did not present an uncomplicated picture. Likely for
(continued...)

-6-

evaluating Plaintiff's credibility regarding her allegations of pain, the ALJ sufficiently evaluated the nature, intensity and limiting effects of Plaintiff's alleged pain, as required in the second step of the <u>Craig</u> analysis.

At step two of the <u>Craig</u> analysis, the ALJ must evaluate the intensity, persistence and functionally limiting effects of Plaintiff's pain. The regulations require the ALJ to consider the location, duration, frequency and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; and daily activities. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2007); <u>see also</u> Social Security Ruling 96-7p, <u>Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements</u> ("SSR 96-7p").

The ALJ's decision clearly documents that he considered the required factors in evaluating Plaintiff's pain. The ALJ noted that following a L5-S1 microdiskectomy in November 1999, Plaintiff returned to work full time and had no symptoms. (Tr. at 18.) In February 2000, Plaintiff complained of disabling fatigue, but her

---

[2](...continued)
this reason, the ALJ actually found that Plaintiff suffered from the severe impairment of "pain" of undetermined ideology, as well as pain with a specific origin, e.g., "knee pain due to arthritis." (Tr. at 18.) Thus, it would appear that the ALJ functionally complied with step one of the <u>Craig</u> analysis and, more importantly, from Plaintiff's perspective, found Plaintiff was suffering from pain even though its exact origin may be difficult to pin down.

back pain was under relatively good control. (Id.) The same month, Plaintiff reported she had occasional twinges of pain, but that she was going to increase her activities, including Tai Kwon Do. (Id. at 19.) Later that month, her back pain remained under good control, although Plaintiff complained that her arm pain had increased upon discontinuing acupuncture. (Id.) However, as the ALJ noted, she reported feeling better by May 2000, having resumed acupuncture and activities, including Tai Kwan Do. (Id.) Plaintiff complained of back pain in September 2000, but her treating physician was unable to find a cause for her symptoms. (Id.) In October 2000, Plaintiff complained of right knee pain and weakness following a fall during Tai Kwon Do in February 2000. (Id.) However, x-rays revealed only minimal degenerative changes. (Id. at 20.)

Plaintiff had several successful nerve root blocks in 2001, and underwent a repeat decompression and partial spine fusion on July 21, 2001. (Id.) A week later, Plaintiff was "doing wonderfully" and her pain medication dosage was reduced. (Id.) The ALJ further noted that another of Plaintiff's treating physicians reported in August that Plaintiff was doing extremely well and that Plaintiff could begin sitting for prolonged periods. (Id.) The ALJ also noted that in September 2001, Plaintiff asked to change her pain medication due to side effects, but reported her pain was well-controlled. (Id.) In October, one of Plaintiff's treating physicians reported that Plaintiff's back pain "has had a fantastic

-8-

resolution immediately after the surgery," and Plaintiff reported her pain score as 3. (Id. at 195.)

The ALJ also considered that in January 2002, Plaintiff told her physician that she had recently returned from a five-week trip to India, but reported no complaints of back pain. (Id. at 20.) In February 2002, Plaintiff reported that she was 80% better following surgery and that she was back to full activities, other than strenuous exercise. (Id.)

The ALJ also considered the November 11, 2002 report from Dr. Shashikant Patel, an examining consultant. The ALJ noted that although Plaintiff reported that she suffered from constant pain in nearly every joint and bone in her body, Dr. Patel reported that Plaintiff sat comfortably on the examining table, was able to get on and off the table without difficulty, and was able to remove and put on her shoes without difficulty. (Tr. at 18)(citing id. at 145-48.) The ALJ further noted that Dr. Patel reported that Plaintiff was able to walk on her toes and heels, touch her knees and raise her hand above her shoulder, but that she could not squat. (Id.) Dr. Patel also reported that Plaintiff's range of motion of the cervical spine and thoracolumbar spine were normal, and that other than "markedly areflexia on the right lower extremities," Plaintiff's neurological exam was normal. The ALJ also considered Plaintiff's subjective complaints to Dr. Patel that her pain medications made her drowsy, and his conclusion that Plaintiff's ability to work would be affected by her CFS, fibromyalgia and depression. (Id.)

-9-

Finally, in addition to the medical evidence of record discussed above, the ALJ considered Plaintiff's hearing testimony and subjective symptoms. (Tr. at 21.) The ALJ noted Plaintiff's testimony that in June 2000, she was unable to work for six weeks and could not get out of bed due to pain in her lower back and right arm; that she has had so many injections that "'it is hard to find places in my back;'" that nerve damage in her right arm felt like acid on her skin; that she has lost finger dexterity and has problems gripping; that she spends most of her time in bed and rarely goes out of the house; that she cannot bend or crouch, and that she does not sleep well. (<u>Id.</u> at 21.)

However, having fully considered these subjective complaints of pain, the ALJ found at step two of the <u>Craig</u> analysis that Plaintiff's testimony was "not fully credible." (Tr. at 22.) Specifically, the ALJ found that,

> [w]hile [Plaintiff] asserts that she is not able to work due to back pain, arm pain, etc [sic], the medical records show that she ran her father's office for 'several months' while he was in India. She was able to travel to India herself for five weeks and reported no problems due to pain on that trip. She was using a cane at the hearing, but there is no objective evidence that it was prescribed other than perhaps for a limited period following her surgery for fasciitis. [Plaintiff] testified that her medications make her drowsy, but she has repeatedly specifically denied this side effect to [her treating physician].

(<u>Id.</u>) This constitutes a substantial evidentiary basis for the ALJ's decision. Thus, the ALJ's analysis of Plaintiff's complaints of pain was sufficient under the parameters of <u>Craig.</u>

-10-

In a similar vein, Plaintiff next argues that the ALJ erred in his assessment of the degree of Plaintiff's pain and resulting impairments. (Docket No. 12, Pl.'s Br. at 14-16.) Specifically, Plaintiff argues that the ALJ failed to adequately consider the resumption of Plaintiff's complaints of lower back pain after she returned from her five-week trip to India in 2001. Plaintiff complains that the ALJ saw the five-week trip to India as an "insurmountable obstacle" to granting her disability based on her claims of back pain. (Id.)

To support this opinion, Plaintiff contends that because the ALJ did not discuss specific post-2001 medical records reflecting Plaintiff's complaints of lower back pain, he "could not have reasonably evaluated" Plaintiff's pain. (Id. at 16.) However, the ALJ did consider and discuss several medical reports from 2002 and 2003, including Dr. Patel's consultive examination and notes from several physician visits. (Tr. at 18, 20.) The ALJ specifically noted that on January 24, 2002, soon after Plaintiff returned from a five-week trip to India, she had no complaints of back pain, and that the following month, Plaintiff reported that she was 80% improved following back surgery. (Id. at 20.) The ALJ also noted Plaintiff's report to her physician in December 2002 that her parents were out of town for some months and that despite claims of pain, she was, at that time, running her father's business. (Id.)

Plaintiff points out that she complained in January 2003 that she was no longer getting adequate pain relief with Oxycontin, and that the ALJ should have considered this in assessing her lower

-11-

back pain.  (Docket No. 12, Pl.'s Br. at 15.)  However, Plaintiff
fails to acknowledge that the following month, she reported that
her pain control was improved and she was "quite stable" on her new
medication.  (Tr. at 163, 457.)  Plaintiff also states that by June
2003, she was taking Roxanol for breakthrough pain in addition to
her baseline pain medications of MS Contin[3] and Vioxx.  (Docket No.
12, Pl.'s Br. at 16)(citing Tr. at 457-58.)  However, Plaintiff's
characterization of the medical record is somewhat misleading.  The
medical notes reveal not that Plaintiff's pain medications were
increased to relieve back pain, but instead were temporarily
increased in response to an earlier attack of pancreatitis.  (Tr.
at 457.)  In fact, the notes further state that Plaintiff reported
that she was "doing fairly well" and that she was no longer taking
any Roxanol and was "quite stable."  (Id.)  Plaintiff's physician
also recommended that she discontinue taking Vioxx, which she had
been taking for years, as such large doses were normally reserved
for acute situations.  (Id.)

        Plaintiff also argues that the ALJ ignored that in September
2003, Plaintiff "'required significant escalation of her baseline
medications.'" (Docket No. 12, Pl.'s Br. at 16)(quoting Tr. at
443.) However, Plaintiff's implication that this escalation was in
response to back pain is again not entirely accurate.   The
September 4, 2003 notes cited by Plaintiff make clear that the
increase in pain medication was in response to a recent debridement

_____

    [3]Plaintiff mentions Oxycontin, but the medical records reveal that she was
then on MS Contin.

                                    -12-

of a groin abscess, and that her physician intended to taper her off the pain medication as she recovered from surgery. (Tr. at 443.)

Plaintiff further contends that the ALJ insisted on objective evidence of Plaintiff's pain, but does not point to any part of the decision supporting this argument. SSR 96-7p provides:

> If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms.

In this case, the ALJ, after reviewing a wide range of evidence as set forth above, determined that Plaintiff's testimony was "not fully credible." (Tr. at 22.) The ALJ considered objective medical evidence, and, as discussed above, fully considered Plaintiff's testimony and other non-medical evidence in determining that Plaintiff's assertions about the degree and intensity of her pain was not fully credible.

The Court may not make credibility determinations or substitute its judgment for that of the ALJ's. Johnson, 434 F.3d at 653. The ALJ is in the best position to observe witnesses and assess their credibility, and such determinations will be upheld as long as there is some support in the record for the ALJ's position and it is not patently wrong. Lewis v. Barnhart, 201 F. Supp. 2d 918, 935 (N.D. Ind. 2002)(citing Herron v. Shalala, 19 F.3d 329, 335 (7th Cir. 1994)). Here, there is more than adequate support for the ALJ's credibility determination and it is not patently

-13-

wrong.  Accordingly, the Court holds that the ALJ's decision that Plaintiff's subjective complaints of pain are "not totally credible" is supported by substantial evidence.

Plaintiff next argues that the ALJ erred in failing to evaluate the effect of Plaintiff's fibromyalgia, chronic fatigue and obesity on her ability to work.  (Docket No. 12, Pl.'s Br. at 17.)  Regarding her fibromyalgia, Plaintiff alleges that the ALJ erred in mentioning this impairment only three times in his decision, and that such lack of discussion is insufficient as a matter of law.  Plaintiff, however, points to no medical findings that fibromyalgia significantly limited her ability to perform basic work activities.  Indeed, Plaintiff refers to only two medical records concerning her fibromyalgia, and in each of them, Plaintiff's physician does nothing more than mention that Plaintiff has or is being seen for fibromyalgia.  (See Docket No. 12, Pl.'s Br. at 9-10 (citing Tr. at 163, 416).)  In neither case does Plaintiff's physician provide any basis for this diagnosis and, more importantly, set out any limitations specifically caused by fibromyalgia and the reasons therefor.

Similarly, Plaintiff fails to point to any evidence concerning limitations caused by her mild obesity.  Social Security Rule 02-1p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity ("SSR 02-1p") directs that obesity will be found to be a severe impairment when, alone or in combination with other impairments, it significantly limits an individual's physical or mental ability to do basic work activity.  Plaintiff has failed to

-14-

refer to any evidence in the record supporting her claim that obesity, either alone or in combination with other impairments, significantly limits her ability to perform basic work activities. Thus, Plaintiff has failed to meet her burden to establish that either her fibromyalgia or obesity are "severe" impairments and, therefore, there was no error in the ALJ's assessment.

As for Plaintiff's CFS, Social Security Ruling 99-2p, <u>Titles II and XVI: Evaluating Cases Involving Chronic Fatigue Syndrome (CFS)</u> ("SSR 99-2p") directs that CFS will be found to be a severe impairment when fatigue, pain, neurocognitive or other symptoms cause a limitation or restriction having more than a minimal effect on a claimant's ability to do basic work activities. SSR 99-2p also requires the ALJ to consider CFS in assessing Plaintiff's residual functional capacity. In this matter, the ALJ found that Plaintiff's CFS is an impairment that is severe within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. at 18.) In finding that this and other impairments are severe, the ALJ by necessity must have considered the limitations arising from and secondary to CFS. Moreover, the ALJ accounted for Plaintiff's CFS in finding that she is limited to work involving only simple, routine, repetitive tasks. Accordingly, the ALJ sufficiently considered Plaintiff's CFS in combination with other limitations in determining Plaintiff's residual functional capacity.

Additionally, there is ample support in the record for the ALJ's finding that the Medical Source Statement completed by Mark Rogers, D.O. was entitled to little weight. The ALJ noted that Dr.

-15-

Rogers concluded that Plaintiff's residual functional capacity was for less than sedentary work due to asthma, chronic fatigue, chronic inactive hepatitis B, diabetes, hypothyroidism and post laminectomy syndrome. (Tr. at 23)(citing id. at 350-56.) The ALJ rejected Dr. Rogers' opinion as conclusory and not supported by the evidence, and further found that the opinion was entitled to little weight because Dr. Rogers had treated Plaintiff for only one month at the time of his assessment and there were no treatment notes in the record from him. (Id.)

Although the opinions of treating physicians may be given controlling weight in making a determination of disability, they will not be given such weight if not supported by medically acceptable clinical and laboratory techniques or if they are not consistent with other substantial evidence in the record. Craig, 76 F.3d at 590. A physician's opinion may be discounted based on a number of factors, such as a relatively short treatment time, lack of independent evaluation, or undue reliance on Plaintiff's statements in forming the opinion. Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438 (4th Cir. 1997). Little weight may be accorded an opinion based mainly on Plaintiff's subjective complaints. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

Here, Dr. Rogers had been treating Plaintiff for only one month. Further, as the ALJ noted, the record did not contain any medical records from Dr. Rogers, and this is adequate to support the ALJ's conclusion that Dr. Rogers' opinion was based not on independent evaluation, but instead on second-hand reports. (Tr.

-16-

at 23.) It would seem that Dr. Rogers' opinion regarding limitations resulting from fatigue were based solely on Plaintiff's subjective complaints. Accordingly, there is substantial evidence supporting the ALJ's rejection of Dr. Rogers' opinion. See Mastro, 270 F.3d at 178; Sterling Smokeless, 131 F.3d at 438.

Plaintiff next argues that the ALJ erred in failing to include all of Plaintiff's limitations in his hypothetical question to the vocational expert. (Docket No. 12, Pl.'s Br. at 20.) By this, Plaintiff means the ALJ should have mentioned Plaintiff's obesity, pain, chronic fatigue, and the effects of her medication. The Court disagrees and finds that the ALJ's step five determination is supported by substantial evidence. At step five of the sequential evaluation, the burden shifts to the Commissioner to demonstrate that there are jobs in the national economy which Plaintiff can perform, considering her age, education and vocational experience in conjunction with her residual functional capacity. See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981.)

In this case, the ALJ found at step four of the sequential evaluation that Plaintiff had a residual functional capacity for light work involving simple, routine, repetitive tasks in an environment with no respiratory irritants such as dust, fumes or smoke. (Tr. at 23.) Because Plaintiff suffers from both exertional and nonexertional limitations, the ALJ was required to demonstrate through the use of vocational testimony that despite her limitations, Plaintiff can perform other jobs in the national

-17-

economy.  See Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983.)

For a vocational expert's opinion to be relevant, it must be based on a hypothetical question that incorporates all of a claimant's impairments.  Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989).  At the hearing, the ALJ asked the vocational expert whether there was work in the local and national economy for an individual of Plaintiff's age, education, and work experience who is able to lift twenty pounds occasionally and ten pounds frequently, and sit, stand, and walk for six hours, but who must avoid fumes, gases, and airborne irritants, and who is limited to simple, routine, repetitive tasks. (Id. at 57-58.)  The vocational expert testified that Plaintiff could work as an office helper, photocopying machine operator and cashier II.  (Id. at 58.)

Plaintiff contends, however, that the ALJ erred in failing to include mental limitations resulting from Plaintiff's pain, chronic fatigue, obesity, side effects from medication, and depression. (Docket No. 12, Pl.'s Br. at 20.)  The ALJ has "great latitude" at step five in posing hypothetical questions to a vocational expert, and the ALJ is free to accept or reject restrictions as long as there is substantial evidence supporting his decision.  Koonce v. Apfel, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999)(citing Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1986))(unpublished decision).  The Court has already determined that Plaintiff has not met her burden in establishing that her mild obesity significantly limited her ability to perform basic work activities.  Similarly,

-18-

Plaintiff has not pointed to any evidence supporting her claim that she suffers limitations from medication side effects. Indeed, as the ALJ noted, although Plaintiff testified that her medications make her drowsy, she repeatedly, specifically denied this side effect to her physicians. (Tr. at 22.) Accordingly, there was no error by the ALJ in excluding such limitations from his hypothetical question to the vocational expert.

The Court also agrees with the Commissioner's position that the ALJ adequately accounted for limitations resulting from Plaintiff's pain and/or medication, chronic fatigue, and depression by limiting her to light work involving only simple, routine, repetitive tasks. Because the ALJ's questions to the vocational expert included all of the restrictions in his assessment of Plaintiff's residual functional capacity, the ALJ's step five determination is supported by substantial evidence. See Walker, 889 F.2d at 50-51.

Finally, Plaintiff argues that the ALJ failed to adequately evaluate and develop the record concerning Plaintiff's depression. (Docket No. 12, Pl.'s Br. at 21.) Plaintiff contends that although the ALJ found at step two of the sequential evaluation that Plaintiff's depression is a "severe" impairment, he did not consider her depression in the remaining steps of the sequential evaluation. (Id.) However, it is clear that the ALJ did sufficiently evaluate Plaintiff's depression. The ALJ fully considered and evaluated both the medical evidence and Plaintiff's testimony concerning her mental condition. (See Tr. at 18-22.) At

-19-

step four of the sequential evaluation, the ALJ explicitly found that based on her limited ability to understand, remember, and carry out instructions, Plaintiff was limited to work involving simple, routine repetitive tasks. (Id. at 23.) He further evaluated the functional limitations resulting from Plaintiff's mental impairments and found that there was no objective evidence of significant limitations in Plaintiff's ability to use judgment in making work-related decisions, to respond appropriately to supervision, co-workers and work situations, to deal with changes in work routine, and in concentration, persistence, and pace. (Id.) In reaching this conclusion, the ALJ considered the medical records in which Plaintiff's treating physicians referred to her depression and attributed her fatigue, in part, to depression. (Id. at 19.) He further considered that Plaintiff testified that she received treatment from a psychologist, Dr. Hernandez, and takes Celexa for her depression. (Id.) But, the ALJ also noted that Plaintiff did not present medical records from Dr. Hernandez, or any other psychological evidence. (Id. at 22.)[4]

Plaintiff contends, however, that the ALJ was under the obligation to further develop the record by obtaining medical records from Dr. Hernandez. (Docket No. 12, Pl.'s Br. at 22-23.) The ALJ has a duty to "explore all relevant facts and inquire into the issues necessary for adequate development of the record." Cook

---

[4]It may be noted that even Dr. Rogers found that emotional factors did not contribute to the severity of Plaintiff's symptoms or any functional limitation. (Tr. at 351.)

-20-

v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). However, it is Plaintiff's burden to present evidence of her disability, and she bears the risk of non-persuasion. Bell v. Chater, 1995 WL 347142, at *4 (4th Cir. June 9, 1995)(unpublished opinion). The ALJ's duty to develop the record does not excuse her from this obligation. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). In fact, Plaintiff's failure to include such records do more to indicate her own evaluation of their significance, than creating a presumption that such records are relevant. This is especially true where, as here, a claimant is represented by counsel.

The ALJ is "not required to function as [Plaintiff's] substitute counsel, but only to develop a reasonably complete record." Bell, 1995 WL 347142, at *4. It was the Plaintiff's obligation, and not the ALJ's, to prove her disability. Because Plaintiff failed to meet her burden to present those medical records she believed would support her claim, she failed to meet that burden. Moreover, nothing indicates the depression was a significant problem in any event. (See Tr. at 351.)

Finally, Plaintiff states that her frequent visits to the doctor and to the hospital make her unemployable. However, Plaintiff fails to present any basis for this argument, and nothing in the record shows such an extreme situation that the decision-maker should have necessarily found this to be a factor for consideration.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (docket no. 10) be denied, that

Defendant's motion for judgment on the pleadings (docket no. 13) be granted, and that judgment be entered in favor of Defendant.


_____
United States Magistrate Judge


February 25, 2008